[Dkt. No. 57]

              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
                    Camden Vicinage

_____
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            v.                      : Crim. No. 08-442 (RMB)
                                    :
GLYN RICHARDS                       : **OPINION**
_____ :


     This matter comes before the Court upon Defendant Glyn Richard's Motion to Reduce Sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).  Defendant Richards is currently serving his sentence at FCI Coleman Satellite Prison Camp in Sumterville, Florida.  The Court having considered the parties' submissions, and for the reasons discussed below, denies the Motion.

     On June 23, 2008, Richards pled guilty to a two-count Indictment, charging him with mail fraud and money laundering. Richards admitted to running an elaborate fraudulent scheme in which he duped hundreds of innocent victims into investing their money in his company, All Freight Logistics, by promising them large returns on their short-term investments.

     While out on bail pending sentencing, Richards absconded to Florida.  After a manhunt by the FBI, Richards was eventually arrested in Tampa, Florida, and appeared before the Court for

sentencing on June 30, 2009.  By the time of his sentencing, Richards had been convicted of seven prior fraud-related convictions.  Prior to the sentencing, this Court provided notice to the parties that the Court was considering upwardly departing from the otherwise applicable Guidelines range of 262-327 months because of the staggering millions of dollars of losses innocent people had suffered.  Several of Defendant's victims testified at his sentencing, and numerous others submitted victim impact statements, speaking of their lost homes, bankruptcies, interruption of the college education of their children, losses of retirement savings, and the horrific emotional strain upon them, their spouses and children.  After hearing all of the evidence presented at sentencing, the Court upwardly departed and sentenced Richards to the statutory maximum sentences on each charge, 20 years on the mail fraud and 10 years on the money laundering, and ordered that they run consecutively.  Richards appealed his sentence, which the Third Circuit Court of Appeals affirmed.

In support of his Motion, Defendant contends that his underlying health conditions and the unprecedented circumstances presented by the COVID-19 pandemic present extraordinary and compelling reasons for this Court to grant the relief request.  He argues that he is particularly vulnerable to COVID-19 as a result of multiple health conditions.  Specifically, at age 56,

2

he states that he suffers from "incurable, progressive disease", Dkt. No. 57, at 9, from which he will never recover, to wit, hypertension, hyperlipidemia, and atherosclerosis.  He also suffers from irregular heartbeat and sciatica.  In his Motion he sets forth the various medications he is taking.  Id.  He also avers that the doctor at FCI Coleman "strongly advised [him] to seek compassionate release due to the hardening of his arteries."  Id.[1]

Defendant contends that there is a "raging epidemic" of COVID-19 at FCI Coleman.  As of July 31, there were 128 positive inmates out of a total of 1,768 inmates or a rate of 7239 per 100,000.  Thus, he argues that FCI Coleman's rate of infection is more than three times that of Florida.

The Government has introduced evidence of the measures that the Bureau of Prisons has taken to prevent the spread of the coronavirus.  As set forth in the Government's submission:

> The BOP has had a Pandemic Influenza Plan in place since 2012.  That detailed protocol establishes a six-phase framework that requires BOP facilities to begin preparations on learning of a suspected outbreak and addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.
> . . .

---

[1] Richards has introduced his medical records from 2016 to the present.  It is noteworthy, however, that Defendant did not produce any evidence to corroborate his statement that the prison's doctor recommended that he be released.

3

> BOP has implemented Phase Six of the Action Plan, which currently governs operations. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 124 days, in order to stop any spread of the disease. Only limited group gathering is permitted, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Essential inmate work details, such as Food Service, continue to operate with appropriate screening.
>
> . . .
>
> All official staff travel also has been cancelled, as has most staff training. All staff and inmates have face masks and are strongly encouraged to wear an appropriate face covering when social distancing cannot be achieved.
>
> All newly sentenced BOP inmates are processed through one of three quarantine sites. FCC Yazoo City, MS; FCC Victorville, Ca; and FTC Oklahoma City, OK; or to a BOP detention center/jail unit. The BOP will test all inmates upon arrival at a BOP detention center/jail unit or at one of the three quarantine sites.[2] All inmates will be tested again before movement to their designated BOP facility. Every newly admitted BOP inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, all staff are screened for symptoms. Such screening includes self-reporting and temperature checks.
>
> Social and legal visits were stopped as of March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone

---

[2] https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 21, 2020).

>allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff, contractors, and visitors.

Govt. Opp., Dkt. No. 64, at 6-8.

**DISCUSSION**

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, <u>Dillon v. United States</u>, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exists "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> 18 U.S.C. § 3582(c) (emphasis added). As such, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites

5

for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.

This Court may only grant a motion for reduction of sentence under the FSA if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020).  This is a statutory requirement that this Court may not waive.  See, e.g., Raia, 2020 WL 1647922 at *2; Massieu v. Reno, 91 F.3d 416, 419 (3d Cir. 1996); Ross v. Blake, 136 S. Ct. 1850 (2016).

On May 29, 2020, the BOP denied Richards' request for compassionate release.  Dkt. No. 57, at 30.  Richards, therefore, has exhausted his administrative remedies.  United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, once the exhaustion requirement has been satisfied as it has here, grant a defendant's motion to reduce his term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]," if the Court finds that (i)

6

"extraordinary and compelling reasons warrant such a reduction," and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The Defendant bears the burden to establish that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[3]

---

[3] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; cf.18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Id. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. Id. § 1B1.13, cmt. n.1(B)-(C). The note recognizes the possibility that BOP could

---

statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

8

identify other grounds that amount to "extraordinary and compelling reasons." Id. § 1B1.13, cmt. n.1(D).

Here, Defendant's medical conditions do not fall within the above categories. Moreover, the medical records reflect that Richards' health issues do not require active treatment outside of taking daily medications. As the medical records indicate, he is receiving continual medical care when needed. Given his ability to take necessary precautions, the medical attention he is receiving, and the extensive preventative measures the Bureau of Prisons is taking to prevent the spread of COVID-19, the Court is not persuaded that Defendant Richards' circumstances constitute "extraordinary and compelling" reasons to grant compassionate release.

Even assuming, arguendo, that Defendant had established an "extraordinary and compelling reason" to reduce his sentence, the Court finds that he has failed to demonstrate that he merits release under the § 3553(a) factors. Under the applicable policy statement, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

A sentence reduction here would be inconsistent with the § 3553(a) factors. First, a reduction would fail to "reflect the seriousness of the offense," "promote respect for the law," and

9

"provide just punishment for the offense." 18 U.S.C. § 3553(a). As the Court discussed at sentencing, Richards engaged in two very serious crimes that left a trail of victims, many who lost their life savings and suffered devastating financial and emotional losses. He spent much of his life committing crimes, most involving fraud and deception. As his criminal record reflects, he continuously violated his terms of probation and supervision. The Court has little confidence that he will not reoffend and victimize other innocent victims if he is released. Indeed, as the Government notes, his time in prison has not been exemplary.

The "history and characteristics of the defendant" and the need to protect the public also counsel against any sentencing reduction. As discussed, the Defendant is no stranger to the criminal justice system. The Court recalls vividly the Defendant's lack of sincere remorse for his destructive criminal conduct. Indeed, he fled the jurisdiction to avoid prosecution only to be apprehended after an intensive manhunt. The need to protect the public is paramount here.

Finally, the need for deterrence and the need to punish the Defendant also weigh against reducing Defendant's sentence. He has served only 11 ½ years of his 30-year sentence. This would be a drastic variance from a sentence that the Court found appropriate to upwardly vary.

The Court does not take lightly Defendant's fear of contracting COVID-19. It is a fear that permeates all of society, both inside and outside of a prison. Here, the BOP is taking measures to contain the spread of COVID-19, and Defendant has not persuaded this Court that there is an extraordinary and compelling reason to reduce his sentence or that he merits release under the §3553(a) factors.

The Motion is therefore DENIED.

                                          s/Renée Marie Bumb_____
                                          RENÉE MARIE BUMB
                                          United States District Judge

Dated: August 26, 2020